# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00055-COA

**ERIC DARRELL LOTT A/K/A HUB CAP A/K/A**        **APPELLANT**
**ERIC LOTT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/2016 |
| TRIAL JUDGE: | HON. CLAIBORNE MCDONALD |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TAMEKIA ROCHELLE GOLIDAY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/24/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND WESTBROOKS, JJ.**

**LEE, C.J., FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Eric Lott was indicted for the murder of Adrian Eley.[1]  A jury in the Jefferson Davis County Circuit Court convicted Lott of manslaughter.  Lott was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections.  The trial judge denied Lott's posttrial motions.  Lott now appeals, asserting the following issues: (1) his trial

---

[1] Lott was also indicted for aggravated assault upon a bystander who was injured during the shooting.  The jury returned a not guilty verdict on this count.

counsel provided ineffective assistance; (2) one of the State's witnesses was not qualified to testify under Mississippi Rule of Evidence 702; and (3) the trial judge failed to be impartial by improperly assisting the State during the trial. Finding no error, we affirm.

**FACTS**

¶2. Just after midnight on June 9, 2015, Lott admittedly shot Eley while the two were arguing in the parking lot of the Palmetto Apartments in Jefferson Davis County, Mississippi. Eley was transported to a local hospital but died from multiple gunshot wounds. According to Lott, Eley had been threatening him for several weeks, accusing Lott of having an affair with Eley's longterm girlfriend, Konswaylo Durr.

¶3. Durr testified that she and Eley had been fighting in the days leading up to his death. A few nights prior to June 9, Durr and Lott had been at a local gas station when Eley arrived. According to Durr, Eley accused the two of having an affair. Durr said Lott asked Eley to go outside and discuss the situation. The situation deteriorated such that Durr retrieved Lott's gun from his car and shot Eley's car. Durr testified that she did so to scare Eley and to retaliate for him stealing her belongings. Eley left the area, and Durr went home.

¶4. The night before Eley's death, Durr testified that she became angry with Eley and asked him to leave their house. Durr had learned that Eley was going to have a child with another woman. At one point Eley tried to sneak back in the house by removing a bedroom air-conditioner unit, but Durr stabbed his hand to prevent his entrance. Durr gave Eley a towel and water for his injured hand, then she left their house. Ultimately, Eley followed Durr to the Palmetto Apartments, where Durr happened to see Lott. She pulled her car

2

beside Lott's car, and the two began talking. According to Durr, Eley walked toward them and began yelling at Durr and Lott, accusing them of having an affair. Eley also grabbed Lott's cell phone. At some point, Eley and Lott were standing on the sidewalk outside the apartment complex talking to Durr, who was still in her car. Durr testified that both she and Lott were explaining to Eley that they were only friends. Durr stated, "[Lott] was mad and slammed in front of my car, saying, 'Man, keep my name out of your mouth. I told you I'm not f---ing your b----.'" Durr said Eley replied, "Well, man, I'm just asking." Durr testified Lott walked toward his car and then walked back with his arm behind his back. Durr stated Eley started running, then Lott began firing at Eley. Durr said Eley was unarmed. Durr further testified that she never heard Eley threaten Lott. Durr was unaware that Eley had previously confronted Lott about their relationship.

¶5.    Lott remembered the events leading up to Eley's death differently. He testified that Eley had been harassing him for several weeks about his relationship with Durr. Lott stated he told Investigator Charles Johnson with the Jefferson Davis County Sheriff's Department that Eley was threatening him. Investigator Johnson testified that Lott told him someone was threatening him, but Lott did not give him a specific name, and without a specific name, he could not help Lott. Lott testified that the day before Eley's death, Eley came to Lott's parent's house looking for him. According to Lott, Eley thought Durr was with him. Lott stated that he wanted to resolve the situation. When Eley arrived, Lott testified that they did discuss the situation, with Lott reiterating that he and Durr were just friends. Lott said he felt frustrated and cut the conversation short. Both men left the house, and Lott drove to the

3

apartment complex. Lott stated that he then received a text from Durr, indicating that Eley said Lott was afraid to come over.

¶6. When he saw Eley at the apartment complex on the night of June 9, Lott said Eley did grab his phone but also hit him in the chest. Lott stated that he was concerned for his safety since Eley weighed about fifty pounds more than he did and was known for his aggressive behavior. Lott further testified that Eley kept shoving him and yelling at him. Lott attempted to get in his car and leave, but Eley followed him. Lott grabbed his gun, which had been laying on the driver's seat, then shot Eley at least six or seven times. He fled the scene, claiming that he did not know if he had shot Eley.

¶7. Lott later turned himself in to the Jefferson Davis County Sheriff's Department, where he was read his *Miranda*[2] rights. He was then interviewed by Investigator Jeff Toler, Investigator Johnson, and Master Sergeant Leo Clemons of the Mississippi Bureau of Investigations.

¶8. Investigator Toler testified that Lott admitted to shooting Eley, but that he did so in self-defense. Master Sergeant Clemons testified that Lott admitted to shooting Eley. Master Sergeant Clemons stated Lott told him that Eley was not armed at the time of the shooting. Master Sergeant Clemons further stated Lott did not mention that Eley had previously threatened him with bodily harm, only that Eley had accused him of having an affair with Durr. Lott told the police that he believed Eley and Durr had concocted a plot against him.

¶9. During questioning, Lott stated that Eley was standing close to him and yelling at his

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

face. Lott said he panicked and tried to walk away, but Eley followed. Master Sergeant Clemons then asked Lott what happened while Lott was reaching for his gun. Lott replied, "When [Eley] seen me reach for my [gun], you know what I'm saying, it was too late. . . . I'm threatened now. I'm scared."

¶10. Dr. John Davis, deputy chief medical examiner for the State of Mississippi, performed the autopsy on Eley. Dr. Davis stated that Eley received four gunshot wounds. One gunshot wound was in Eley's upper chest. Dr. Davis noted the bullet entered Eley's back, but he could not locate the exit wound on Eley's chest, most likely due to surgical intervention prior to Eley's death. Eley had two gunshot wounds to his left leg. One entered his left buttock and exited through the outside of Eley's left thigh. The other bullet entered the inside of Eley's left thigh and exited on the back of his left thigh. Another bullet entered Eley's left upper arm from the back, but Dr. Davis was unable to locate the exit wound. Dr. Davis also testified that he could not determine the sequence of the gunshot wounds.

¶11. Dr. William Bolls, a general surgeon, also testified. Dr. Bolls operated on Eley when he was brought to the emergency room. Dr. Bolls testified to the location of Eley's gunshot wounds based upon his personal knowledge. One gunshot wound entered Eley's upper back and exited near his right nipple. Eley had an entrance wound to his left buttocks with a corresponding exit wound on his inner left thigh, and an entrance wound to his left upper thigh. Eley also had an entrance wound to the back of his left upper arm and an exit wound near the elbow.

**DISCUSSION**

5

## I. Ineffective Assistance of Counsel

¶12. In his first issue on appeal, Lott argues that his trial counsel was ineffective for failing to request a particular self-defense jury instruction. Lott relies upon *Manuel v. State*, 667 So. 2d 590 (Miss. 1995), to support his claim that his trial counsel erred by failing to request a self-defense instruction indicating that he was afraid of being seriously injured by a larger, though unarmed, victim. Lott contends the failure to do so left him with no jury instruction on his theory of defense.

¶13. We first note "that, generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015) (citing *Archer v. State*, 986 So. 2d 951, 955 (¶15) (Miss. 2008)). The supreme court has explained that

> [a]n appellate court is limited to the trial-court record in its review of the claim(s), and there may be instances in which insufficient evidence and/or information exists within the record to address the claim adequately. In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief (PCR).

*Id.* at 423 (¶18) (citation omitted). However, an ineffective-assistance-of-counsel claim can be addressed on direct appeal when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Johnson v. State*, 196 So. 3d 973, 975 (¶7) (Miss. Ct. App. 2015). In the case before us, both parties did not stipulate that the record is adequate for this Court to make a finding on direct appeal. Thus, the proper inquiry is whether the record affirmatively shows that Lott

6

was denied effective assistance of counsel of constitutional dimensions. *See* M.R.A.P. 22(b).

¶14.    To prove ineffective assistance of counsel, Lott must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  There is a strong presumption that a trial counsel's performance falls within the range of reasonable professional assistance.  *Id.* at 689.  To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  We look "at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial." *Howell v. State*, 163 So. 3d 240, 259 (¶49) (Miss. 2014).

¶15.    In *Manuel*, the defendant, Nancy Manuel, stabbed and killed her live-in boyfriend, Wendell Norris.  *Manuel*, 667 So. 2d at 590.  During trial, her counsel requested the following instruction be given to the jury:

> The Court instructs the jury that if the deceased, Wendell Norris, was a much larger and stronger man than the defendant, Nancy Manuel, so much so that the Defendant was wholly and absolutely incapable of coping with him in a physical combat, and was liable to receive serious and great bodily injuries at the hands of the deceased in the event that they became engaged in combat, then the Defendant was justified in using a deadly weapon to protect [herself] from an unjustifiable and deadly attack of the deceased even though the deceased was wholly unarmed, and the Defendant was in no danger from the deceased except such as might be inflicted by the deceased with his hands or feet.

*Id.* at 591.

¶16.    The trial judge found that the instruction was generally correct, but refused to give the instruction because it was peremptory in nature.  *Id.* at 593.  The supreme court agreed with

7

the trial judge, but reversed because the trial judge had a duty to cure the defective instruction since Manuel had not offered any other instruction presenting her theory of self-defense. *Id.* The court stated, "Where the instructions are in improper form and are the only ones embodying a legally correct theory of the defendant's defense, it is the duty of the trial court to see that the instructions are placed in proper form for submission to the jury." *Id*. The supreme court further stated that while a defendant "is entitled to have an instruction on the theory of her defense, that instruction should not single out certain parts of the evidence to the point that it amounts to a comment on the weight of the evidence." *Id*. at 592.

¶17. The record does not contain a transcript of the jury instruction conference between the trial judge and trial counsel. But the record indicates that Lott's trial counsel requested and was granted two instructions regarding self-defense: jury instructions D-12 and D-14. Jury instruction D-12 (Instruction 10) stated:

> The Court instructs the jury that in order to justify the plea of self-defense in this case, there must be something shown in the conduct of Adrian Eley, the victim, at or about the time of his killing, indicating a present intention to kill Eric Lott or to do him some great personal injury, and imminent danger of such intention being accomplished.

> Mere fears or beliefs of Eric Lott are insufficient. The danger to Eric Lott from Adrian Eley must have been such as to lead a reasonable person under similar circumstances to reasonably believe that some infliction of serious bodily harm was necessary to prevent Adrian Eley from then and there killing Eric Lott or doing him some great bodily harm.

Jury instruction D-14 (Instruction 11) stated:

> The Court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some

great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

¶18.    Lott has failed to show any prejudice by his counsel's decision not to request an instruction similar to the one in *Manuel*. Lott's theory of self-defense was presented to the jury; thus, Lott cannot show that he was denied effective assistance of counsel of constitutional dimensions. This issue is without merit.

## II.    Testimony of Dr. Bolls

¶19.    In his next issue on appeal, Lott argues that the trial judge erred in allowing Dr. Bolls, who was not tendered as an expert, to testify as an expert in pathology without satisfying the requirements of Rule 702.[3] However, Lott failed to object to Dr. Bolls's testimony pursuant to Rule 702. Rather, when the State asked Dr. Bolls if he had reviewed the autopsy report, Lott objected that Dr. Bolls "did not perform the autopsy report. This would be secondhand or hearsay information that he received from some other report that he read and did not prepare."

¶20.    "A trial judge cannot be put in error on a matter which was not presented to him for

_____

[3] Pursuant to Rule 702, an expert may provide testimony if "qualified . . . by knowledge, skill, experience, training, or education . . . ." M.R.E. 702. Once qualified, the expert may provide testimony if
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.*

decision." *Holmes v. State*, 798 So. 2d 533, 537 (¶16) (Miss. 2001). Therefore, Lott waived the right to appeal this issue. *Haddox v. State*, 636 So. 2d 1229, 1240 (Miss. 1994). Lott instead urges us to review this issue for plain error. We only employ the plain error doctrine in situations when "a defendant's substantive or fundamental rights are affected." *Flora v. State*, 925 So. 2d 797, 811 (¶42) (Miss. 2006). "Plain-error review is properly utilized for 'correcting *obvious* instances of injustice or misapplied law.'" *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008) (emphasis added). The Mississippi Supreme Court has explained that, in order to "determine if plain error has occurred, we must determine 'if the trial court has deviated from a legal rule, whether that error is plain, clear[,] or obvious, and whether the error has prejudiced the outcome of the trial.'" *Neal v. State*, 15 So. 3d 388, 403 (¶32) (Miss. 2009) (quoting *McGee v. State*, 953 So. 2d 211, 215 (¶8) (Miss. 2007)).

¶21. Dr. Bolls first testified regarding his personal knowledge of Eley's wounds by describing each gunshot wound. Lott did not object to this particular testimony. Later, the State asked Dr. Bolls if he had reviewed Eley's autopsy report. Lott's trial counsel objected as noted above. The trial judge asked Dr. Bolls whether he "saw and examined the entry and exit wounds on Mr. Eley." Dr. Bolls replied affirmatively. The trial judge then asked him, "You later looked at the autopsy report?" Dr. Bolls replied affirmatively. The trial judge asked, "Did that report indicate the same wounds that you noted when you were treating [Eley]?" Dr. Bolls replied that it did. The trial judge then allowed Dr. Bolls to answer the State's questions.

¶22. Dr. Bolls generally agreed with the autopsy's findings, except for the gunshot wound

to Eley's left thigh. On cross examination, Lott asked Dr. Bolls about this particular wound. The autopsy report had indicated that the wound to Eley's inner left thigh was an entrance wound and the bullet traveled from front to back and downward, exiting his outer left thigh. Dr. Bolls disagreed, stating, "It's not what I observed." Rather, Dr. Bolls testified that the wound to Eley's inner left thigh was an exit wound and the entrance wound was at the left buttocks. He later stated that the wound to Eley's outer left thigh was an entrance wound with no corresponding exit wound.

¶23. We cannot find plain error in this instance. The trial judge did not deviate from a known legal rule. Dr. Bolls's testimony was an explanation of his own observations from treating Eley. Dr. Bolls simply disagreed with one of the findings of the autopsy report based upon his treatment of Eley. Lott further argues that he was prejudiced by Dr. Bolls's testimony because the implication is that Lott shot Eley in the back while Eley was fleeing. However, Dr. Bolls never testified that Eley was fleeing when he was shot—and neither did Dr. Davis. This issue is without merit.

### III. Partiality of Trial Judge

¶24. In his final issue on appeal, Lott argues that the trial judge showed partiality to the State by "aggressively assisting" it during trial. However, Lott failed to make timely objections to the trial judge's instances of purported partiality. In order for this Court to review the purported partiality, Lott "had an obligation to make a contemporaneous objection to [the] inappropriate behavior and lodge a proper objection at the time." *Golden v. State*, 860 So. 2d 820, 822 (¶4) (Miss. Ct. App. 2003) (citing *Powell v. Ayars*, 792 So. 2d 240, 248

11

(¶29) (Miss. 2001)). Mississippi Rule of Evidence 614(c) specifies that objections to the trial judge's comments should be made either when the disputed comments are made or at the next available opportunity outside the jury's presence. Lott's "failure to raise a timely objection not only denied the opportunity for corrective measures during trial, it also precludes [him] from pursuing the claim on appeal." *Id.*

¶25. Lott urges us to review this issue under plain error because "the conduct of the trial judge, on the entire record, was so reprehensible and prejudicial as to deny a fair trial or due process of law." *Jackson Yellow Cab Co. v. Alexander*, 246 Miss. 268, 277, 148 So. 2d 674, 678 (1963). According to Lott, these instances of partiality by the trial court included coaching the State on how to present Dr. Bolls's testimony; advising the State on deficiencies in its presentation of evidence, including how to cure the deficiencies; and helping the State qualify Dr. Davis.

### A. Dr. Bolls's Testimony

¶26. During Dr. Bolls's testimony, the trial judge stated that he was confused as to the location of the gunshot wounds and asked one of the attorneys to act as a mannequin in order for Dr. Bolls to explain where he saw the gunshot wounds on Eley. One of the prosecutors for the State volunteered. Lott contends that this action by the trial judge placed more credibility on Dr. Bolls's testimony rather than Dr. Davis's testimony, who was called to testify several witnesses later. We fail to see how this conduct by the trial judge was prejudicial to Lott.

### B. Advice on Presentation of Evidence

¶27. During the direct examination of Investigator Toler, the State asked him questions about a warrant he had obtained to search Lott's car. The trial judge paused the proceedings and asked the State via bench conference if it was going to mark the search warrant and the accompanying affidavit for identification. After some discussion, the items were admitted for identification. We fail to see any error here.

### C. Expert Qualification

¶28. Lott argues that the trial judge improperly assisted the State in qualifying Dr. Davis as an expert witness. After the State tendered Dr. Davis as an expert in forensic pathology, the trial judge asked him several questions, such as the status of his license in Mississippi, how many times he had testified as an expert witness, and his board certifications. However, since the decision of whether an expert is qualified is left to the trial judge's discretion, we can find no error. *See Burnham v. Stevens*, 734 So. 2d 256, 268 (¶47) (Miss. Ct. App. 1999).

¶29. Lott has failed to show that the conduct of the trial judge was so reprehensible and prejudicial as to deny a him a fair trial. This issue is without merit.

¶30. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**