# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00517-COA

**DEVONTA PIPKIN A/K/A DEVONTA O. PIPKIN**   **APPELLANT**
**A/K/A DEVONTA ORLANDO PIPKIN**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2021 |
| TRIAL JUDGE: | HON. SMITH MURPHEY |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | IMHOTEP ALKEBU-LAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON KAY HARTMAN |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 05/24/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND EMFINGER, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. Devonta Pipkin appeals the circuit court's denial of his second motion for post-conviction collateral relief (PCR). Finding no error in the circuit court's ruling, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Pipkin was charged with one count of conspiracy to commit armed robbery, one count of burglary of an inhabited building, and one count of capital murder. Pipkin's trial attorney Anthony Farese filed a request to enter into plea negotiations on December 13, 2013. On June 16, 2014, Farese petitioned to enter a plea of guilty to one count of first-degree murder with deliberate design in exchange for a recommendation by the State that the court remand

the counts for armed robbery and burglary and, also, reduce the capital murder charge to that of first-degree murder. Pipkin's plea and sentencing hearing was held on that same day. The trial court concluded that Pipkin gave his plea freely and voluntarily and was well advised by his trial attorney. Afterward, Pipkin pled guilty to first-degree murder and on June 19, 2014, was sentenced to life imprisonment without eligibility for parole.

¶3.     On June 19, 2017, Pipkin filed his first PCR motion, challenging his conviction on the grounds of ineffective assistance of counsel, an involuntary plea, insufficient evidence, and new evidence establishing his innocence. The circuit court denied Pipkin's PCR motion. Pipkin appealed and this Court affirmed the circuit court's denial. *Pipkin v. State*, 296 So. 3d 90, 91 (¶1) (Miss. Ct. App. 2019), *cert. denied*, 293 So. 3d 832 (Miss. 2020).

¶4.     On December 31, 2020, Pipkin filed his second PCR motion (at issue here) alleging that he was "actually and factually innocent." Pipkin presented four affidavits as newly discovered evidence from his co-defendants, swearing that Pipkin was not involved in the crime. The circuit court found, however, that the newly-discovered-evidence exception did not apply to Pipkin because (1) Pipkin pled guilty, and the affidavits did not negate his plea; (2) Pipkin did not establish that these affidavits were unavailable to him at the time that he entered his guilty plea; and (3) Pipkin's own admission led to Pipkin's conviction and not that of his co-defendants. On April 9, 2021, the circuit court denied Pipkin's second PCR motion as without merit, time-barred, and successive. Pipkin appeals.

## STANDARD OF REVIEW

2

¶5.     When reviewing a circuit court's order denying a PCR motion, we "will not disturb the trial court's factual findings unless they are found to be clearly erroneous . . . ." *Lambert v. State*, 941 So. 2d 804, 807 (¶14) (Miss. 2006) (quoting *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999)).  We review questions of law de novo.  *Id.*

## ANALYSIS

¶6.     A PCR motion must be brought within three years of the conviction.  Miss. Code Ann. § 99-39-5(2) (Rev. 2020) ("[I]n case of a guilty plea, within three (3) years after entry of the judgment of conviction.").  Pipkin pled guilty to first-degree murder on June 16, 2014.  He filed his second PCR motion on December 31, 2020, which was more than three years after his conviction.  Thus, we find that Pipkin's second PCR motion was, on its face, properly denied as untimely.  *Id.*

¶7.     A court's dismissal or denial of a PCR motion is "a final judgment and shall be conclusive until reversed.  It shall be a bar to a second or successive motion under this article."  Miss. Code Ann. § 99-39-23(6) (Rev. 2020).  Pipkin filed his first PCR motion in June 2017 and filed his second PCR motion in December 2020.  We also find that on its face, Pipkin's second PCR motion is barred as successive.  *Id.*

¶8.     We further address and reject Pipkin's contention that because he raised a claim of "actual innocence" for the first time, his second PCR motion is not barred as successive.  Pipkin alleged in his first PCR motion that he suffered ineffective assistance of counsel by his counsel's failure to investigate the factual charges of his indictment.  He alleged that but

for his counsel's ineffective assistance, he would not have pled guilty because he was innocent. He further alleged that because he was innocent, "[h]is subsequent plea of guilty and life sentence was a miscarriage of justice." Pipkin then maintained in his second PCR motion, without alleging ineffective assistance of counsel, that because he was "actually and factually innocent," he had a fundamental constitutional right to have his sentence vacated. We find that Pipkin raised substantially the same issues in his first PCR motion as he did in his second motion, albeit repackaged. *See Dever v. State*, 210 So. 3d 977, 982 (¶19) (Miss. Ct. App. 2017).

### The circuit court properly denied Pipkin's PCR motion.

¶9.     Pipkin asserts that the circuit court erred when it "dismissed" his second PCR motion. "If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal." Miss. Code Ann. § 99-39-11(2) (Rev. 2020). The circuit court dismissed Pipkin's second PCR motion as both time-barred and successive and denied the relief requested due to lack of merit. We find the circuit court's order was proper, and none of the following procedural-bar exceptions apply:

> (1) an intervening decision of either the United States Supreme Court or the Supreme Court of the State of Mississippi; (2) new evidence not reasonably discoverable at trial; or (3) an expired sentence or an unlawful revocation of parole, probation, or conditional release.

*Britton v. State*, 313 So. 3d 1056, 1059-60 (¶11) (Miss. Ct. App. 2021). Also excepted are "errors affecting fundamental constitutional rights." *Rowland v. State*, 42 So. 3d 503, 506

4

(¶9) (Miss. 2010).

¶10. Pipkin asserts that his second PCR motion was not procedurally barred because he attached four affidavits from his co-defendants as "newly discovered evidence." He contends that he was actually and factually innocent, which he also argues is an error affecting his constitutional rights. We disagree. Considering the "actual innocence" doctrine, as well as our analyses in *Trotter* and *Henderson*, we conclude for the reasons given below that Pipkin failed to substantially show he possessed newly discovered evidence sufficient to overcome his procedural bars. *Henderson v. State*, 170 So. 3d 547, 554 (¶22) (Miss. Ct. App. 2014); *Trotter v. State*, 907 So. 2d 397, 401-02 (¶¶12-13) (Miss. Ct. App. 2005).

### A.    Newly Discovered Evidence

¶11. Our newly-discovered-evidence exception provides that a movant may demonstrate that "he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence." Miss. Code Ann. § 99-39-23(6). Likewise,

> [w]here newly discovered evidence is alleged in a habeas application, evidence which could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary hearing. Of course, such evidence must bear upon the constitutionality of the application's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on habeas corpus.

*Herrera v. Collins*, 506 U.S. 390, 400 (1993).

5

¶12. To constitute newly discovered evidence, the movant "must show that (1) the new evidence was discovered after the trial; (2) it could not by due diligence have been discovered before trial; (3) it is material to the issue and not merely cumulative or impeaching; and (4) it would probably produce a different result or verdict in the new trial." *Brown v. State*, 306 So. 3d 719, 744 (¶96) (Miss. 2020); *see Wilkerson v. State*, 307 So. 3d 1231, 1239 (¶18) (Miss. Ct. App. 2020); *Porter v. State*, 281 So. 3d 935, 939 (¶17) (Miss. Ct. App. 2019); *Russell v. State*, 73 So. 3d 542, 545 (¶9) (Miss. Ct. App. 2011).

¶13. Attached to Pipkin's second PCR motion are four affidavits from his co-defendants Quinn McNeal, Nicholas Sledge, Kristie Farrow, and Lashuandra McNeal, described as newly discovered evidence. Each affidavit gave one line attesting to Pipkin's lack of participation in the death of Emanuel Gomez. Kristie's and Lashuandra's affidavits state, "I did not conspire with Devonta Pipkin, nor do I have personal knowledge that Devonta Pipkin participated in the events that [led] to the death of Emmanuel Gomez." Nicholas' and Quinn's affidavits[1] swear that Pipkin "did not conspire or participate in the events that [led] to the death of Emanuel Gomez."

¶14. These statements do not constitute newly discovered evidence that were not available to Pipkin at the trial, or in Pipkin's case, the plea hearing. The affidavits, although provided to Pipkin after his plea hearing, were statements that could have been discovered through due

---

[1] Nicholas Sledge's affidavit and an unsworn statement by Quinn McNeal were attached to Pipkin's first PCR motion, meaning these statements have previously been addressed and considered.

diligence before the plea hearing. According to the record, the State filed a response to Pipkin's motion for discovery which indicated that the co-defendant's statements were provided to Pipkin's attorney during discovery and would have been subject to cross-examination. To corroborate this fact, the record also reflects that Pipkin's attorney, in a motion to sever parties (i.e., co-defendants), stated that he obtained copies of the defendants' recorded statements from the Senatobia Police Department. Nothing in the record, however, indicates that these witnesses were not available to him. The record also does not show that the co-defendants could not have testified to Pipkin's innocence at the time of the plea hearing. *Johnson v. State*, 110 So. 3d 353, 355 (¶7) (Miss. Ct. App. 2013) (finding that the statement from Johnson's brother was not newly discovered evidence even though his brother stated that he was the guilty party).

¶15.    The statements given by Pipkin's co-defendants are also suspicious and impeachable statements that would not warrant a new trial. Indeed, "[r]ecanted testimony is exceedingly unreliable, and is regarded with suspicion . . . ." *Russell v. State*, 849 So. 2d 95, 107 (¶15) (Miss. 2003) (internal quotation marks omitted). Our Supreme Court has described recanted testimony as "perjury." *Bradley v. State*, 214 So. 2d 815, 817 (Miss. 1968). In another case, a witness named Pannell "gave a statement to police during the investigation" and then later "executed an affidavit 'to provide information as to [the defendant] Marlon Howell's innocence.'" *Howell v. State*, 163 So. 3d 240, 248-49 (¶¶14, 16) (Miss. 2014). Our Supreme Court held that the trial court did not err by finding Pannell's affidavit unreliable. *Id*. at 248

7

(¶12). The same outcome occurred in another case where two witnesses recanted trial testimony after the completion of the trial. *Russell*, 849 So. 2d at 106-07 (¶¶13-14). Our Supreme Court found that the "recanted testimony [did] not entitle a defendant to a new trial." *Id*. at 107 (¶15).

¶16. At the plea hearing, the State presented portions of the co-defendant's statements given during the police investigation. One of the co-defendants, Kristie, stated that she rode in the car with Pipkin, Quinn, and Nicholas to Gomez's house on the day of his murder. Kristie also stated, according to the State, that Pipkin, Quinn, and Nicholas possessed weapons and that their plan was to "hit a lick." Additionally, Quinn and Nicholas in their police interviews, corroborated Kristie's account. Pipkin also affirmed these facts at the hearing. When the trial court asked Pipkin if he disputed any of the facts or needed to clarify any point, Pipkin answered in the negative. It is of no consequence that Kristie, Quinn, and Nicholas are now, in their affidavits, recanting their statements by asserting that Pipkin was not involved in the events that led to the crime. Without additional evidence to corroborate Pipkin's story, and relying, in part, on *Howell* and *Russell*, the affidavits were merely impeachable.

¶17. Given that Pipkin has failed to meet all of the prongs of the newly-discovered-evidence standard, we find that Pipkin has not substantially shown that the PCR ruling violated a statutory right.

### B. Actual Innocence

¶18. We now determine whether the circuit court's order denying relief violated Pipkin's state or federal constitutional rights. Pipkin asserts that because he was actually and factually innocent, his sentence is a fundamental constitutional error and a miscarriage of justice. However, successful actual-innocence claims "are extremely rare." *Trotter*, 907 So. 2d at 402 (¶13) (citing *Schulp v. Delo*, 513 U.S. 298, 321 (1995)). This is partly due to the fact that actual innocence claims are a "gateway for federal habeas review of a procedurally defaulted claim of constitutional error." *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013) (quoting *House v. Bell*, 547 U.S. 518, 537-38 (2006)). It is principled in equity to "ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera*, 506 U.S. at 400. Moreover, the standard applied to actual innocence claims is whether "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him"; the petitioner must not only show that he has newly discovered evidence that proves his innocence, but also that he has a constitutional claim for review on the merits. *Adams v. State*, 954 So. 2d 1051, 1054 (¶12) (Miss. Ct. App. 2007); *see Herrera*, 506 U.S. at 401 ("Few rulings would be more disruptive . . . than to provide for federal habeas review of freestanding claims of actual innocence.").

¶19. Pipkin did not assert in his second PCR motion a constitutional claim in addition to his assertion that he was actually innocent. Rather, Pipkin asserted that the actual innocence doctrine itself is a fundamental constitutional error worthy of exception. We disagree. *Sneed v. State*, 85 So. 3d 298, 300 (¶10) (Miss. Ct. App. 2012). *See Howard v. State*, 945 So. 2d

9

326, 369 (¶95) (Miss. 2006); *Trotter*, 907 So. 2d at 401 (¶12); *Bousley v. United States*, 523 U.S. 614 (1998). Conversely, Pipkin claims on appeal that he suffered ineffective assistance of counsel; however, Pipkin did not allege ineffective assistance of counsel in his second PCR motion. As the question was not properly raised before this Court, we find Pipkin's ineffective assistance of counsel claim procedurally barred.

¶20. Notwithstanding the procedural bar, we will address Pipkin's claim of ineffective assistance of counsel. "In the context of a guilty plea, the defendant must prove, by a preponderance of the evidence, that but for the ineffective assistance of counsel, he would not have pled guilty and insisted on a trial." *Pleas v. State*, 766 So. 2d 41, 43 (¶7) (Miss. Ct. App. 2000). "[A] strong but rebuttable presumption exists that a counsel's conduct falls within the wide range of reasonable professional assistance." *Williams v. State*, 228 So. 3d 949, 952 (¶13) (Miss. Ct. App. 2017). Pipkin asserts that had his trial attorney properly investigated his co-defendants, he would have known that they were not implicating him in the crimes and would not have pled guilty. Again, the record reflects that Pipkin's trial attorney received the co-defendant's witness statements and determined that they would confuse the jury rather than prove Pipkin's innocence. Pipkin also at all times knew whether or not he was innocent. It is of no fault of his trial attorneys that the co-defendants have changed their story years later, after his conviction. Given that the statements only address the events that led to Gomez's death, Pipkin has not shown that he would have insisted on a trial but for his allegedly ineffective assistance of counsel.

**CONCLUSION**

¶21. We hold that Pipkin has not shown that he has a procedurally viable claim or that an exception to the procedural bars exists; therefore, Pipkin's second PCR motion was properly denied. For these reasons, we affirm the circuit court's order.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., AND LAWRENCE, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**