# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01619-COA

ANTWINE EQUALITY GRAVES A/K/A          APPELLANT
ANTWOINE EQUALITY GRAVES

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2013 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL W. CROSBY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| NATURE OF THE CASE: | CIVIL – POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | POST-CONVICTION RELIEF DENIED |
| DISPOSITION: | AFFIRMED - 08/04/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., ISHEE AND MAXWELL, JJ.

### MAXWELL, J., FOR THE COURT:

¶1. The Mississippi Supreme Court ordered an evidentiary hearing on Antwine Equality Graves's post-conviction relief (PCR) motion. The sole issue was the recantation of a witness from Graves's murder trial. As directed, the circuit judge conducted the hearing but was not swayed by the recanting witness's affidavit or his new testimony that he did not really see Graves shoot the victim. So the circuit judge denied Graves's request for a new trial. After review, we find the judge's denial was supported by substantial evidence and was not clearly erroneous. We thus affirm.

**Facts and Procedural History**

¶2.     On January 13, 2011, Graves dropped by the Blue Note Lounge in Biloxi, Mississippi. As the night progressed, Graves got into an argument with Marlon Bland. Both men were told to leave the bar, which they did. As Graves and Marlon went outside, the two continued to argue. The disagreement ended abruptly when Marlon was shot with a pistol. There was conflicting evidence about who shot Marlon. But it was undisputed that Marlon was shot in the neck and died outside the lounge around 3 a.m.

¶3.     Graves was later charged with Marlon's murder. Willie Fairley gave a statement to police that he saw Graves shoot Marlon. And Fairley later testified at trial that he watched Graves shoot Marlon in the neck. Daray Bland—Marlon's brother—also testified at trial that he saw Graves shoot Marlon.

¶4.     On January 20, 2002, a jury found Graves guilty of murder. Since he had two prior felonies, Graves was sentenced as a habitual offender to life without parole. On direct appeal, this court affirmed Graves's conviction and sentence. *See Graves v. State*, 914 So. 2d 788, 799 (¶42) (Miss. Ct. App. 2005).

¶5.     Graves later sought permission from our supreme court to seek post-conviction relief. The supreme court granted Graves's request, but strictly limited his PCR motion. Graves was only allowed to seek PCR review of one issue—"the issue of the recantation of Willie Earl Fairley's testimony[.]" And the supreme court denied Graves's request to pursue his remaining PCR claims.

2

¶6. On June 20, 2013, the circuit judge held an evidentiary hearing. The only issue teed up for review was Fairley's recanted testimony. As expected, during the PCR hearing, Fairley recanted his trial testimony. His new testimony centered on his claim that he was in the club during the shooting, so he did *not* really see who shot Marlon. When asked why he had earlier testified at trial that he *did* see Graves shoot Marlon, Fairley said he felt pressured by Marlon's family—a different reason from the one offered in his recanting affidavit.

¶7. During the hearing, Fairley conceded the differences between his PCR testimony and recanting affidavit. According to the affidavit, he was pressured by law enforcement officers to say he witnessed the shooting. And he felt responsible because he took Marlon to the club the night he was murdered.

¶8. But one thing Fairley was consistent about was the fact that he did not prepare the affidavit himself. Instead, Graves's PCR attorneys[1] crafted a typed affidavit, including its content, before ever talking to him. They later presented it to him for his signature. As Fairley put it, he would not have come forward with the "truth" had he not been sought out by Graves's attorneys.

¶9. Graves took the stand at the PCR hearing, denying that he shot Marlon. And while Graves was testifying, his attorney tried to introduce a 911 recording—purportedly from Marlon's brother, Daray—in an effort to retroactively impeach Daray's trial testimony. But

_____

[1] Graves is represented on appeal by Michael W. Crosby. Graves was represented by different lawyers during his PCR case.

3

citing the supreme court's specific limitation to Fairley's recantation, the circuit judge found the 911-recording issues were not properly before him.

¶10. After the hearing, the circuit judge entered an order denying Graves's PCR motion. In his order, the judge expressed that he had properly viewed Fairley's recanted testimony with suspicion. And he "was not satisfied with the truthfulness" of Fairley's new testimony at the hearing. Because he did not believe Fairley's recantation, he denied Graves's PCR motion.

¶11. Graves appealed.

## Discussion

### I. Recanted Testimony

¶12. While Graves suggests the circuit judge should have given more credibility to Fairley's recanted testimony and granted a new trial, credibility decisions are for the trial judge, not this court. And here, we find no reason to tamper with the judge's denial of the PCR motion.

¶13. It is true that recanted testimony, if believed by the trial judge, may in some situations require a new trial. But the mere fact a trial witness later recants does not itself necessitate a new trial. *Sharp v. State*, 152 So. 3d 1212, 1214 (¶10) (Miss. Ct. App. 2014) (quoting *Woods v. State*, 141 So. 3d 14, 16 (¶10) (Miss. Ct. App. 2014)). Recanted testimony, however, is an "adequate ground" for granting an evidentiary hearing. *Id.* Such a hearing allows the judge to "better evaluate the testimony of the recanting witness" and resolve

4

credibility issues. *Id.*; *see also Turner v. State*, 771 So. 2d 973, 976 (¶8) (Miss. Ct. App. 2000). Typically, the judge is tasked with deciding if the witness was lying at trial or later at the PCR hearing. *Id.* As our supreme court has put it, when making this credibility call, trial judges should be mindful that "recanting testimony is exceedingly unreliable[.]" *Williams v. State*, 669 So. 2d 44, 53 (Miss. 1996) (quoting *Bradley v. State*, 214 So. 2d 815, 817 (Miss. 1968)). So trial judges should be mindful to regard recanting testimony "with suspicion." *Id.* If the judge "is not satisfied that such testimony is true," the judge has "the right and duty . . . to deny a new trial." *Id.*

¶14. Here, the circuit judge followed these dictates. He opted to hold an evidentiary hearing about Fairley's recanted testimony—testimony he viewed as highly suspect. As the judge put it, he "was not satisfied with the truthfulness of the testimony provided by [Fairley] at the [PCR] hearing." This decision was certainly within the judge's prerogative. And we cannot fault him for discrediting Graves's new testimony since "experience teaches all courts a healthy skepticism toward recanted testimony." *Sharp*, 152 So. 3d at 1214 (¶10).

¶15. Also telling was Fairley's admission that he only came forward after one of Graves's PCR lawyers approached him with a pre-made affidavit a decade after Graves's conviction. Fairley had not even mentioned recanting before he was approached. And it was the PCR attorney, not Fairley, who described the alleged facts listed in the affidavit—purported facts that ultimately conflicted with Fairley's PCR testimony. Fairley merely signed it.

¶16. On top of that, Fairley was not the lone witness who testified at Graves's murder trial

5

that Graves was the shooter. Both Fairley and Daray testified that they saw Graves shoot Marlon. Though Fairley recanted his testimony, Daray did not. Based on this additional testimony, the judge found Graves failed to show that absent Fairley's testimony, the trial's result would have been different. Thus, we do not find the judge's credibility assessments and ultimate PCR denial were clearly erroneous.

## II. 911 Recording

¶17. Graves next argues the circuit judge erred in cutting off his attempt to retroactively impeach Daray's trial testimony with a 911 recording supposedly depicting Daray's voice. The judge refused to consider this issue because the supreme court expressly limited Graves's PCR motion to Fairley's recanted testimony. Since all parties agree that the 911 call did not come from Fairley, it was not properly before the trial judge.[2] We thus find the circuit judge rightly excluded inquiry about it.

## III. Request for Remand

¶18. Graves's appellate counsel suggests we should remand the case back to the circuit court to "more fully develop the issues." But an attorney's desire to further investigate a case is not a legal basis for remand. Graves's appellate counsel has been a strong advocate for Graves. He has no doubt been persistent and zealous in his representation, both in briefing and oral argument. We acknowledge that he "views the case differently" than Graves's former attorneys and asks for a chance "to present the case with additional facts." But the

---

[2] We also note this issue was never raised in Graves's PCR motion.

possibility that Graves's appellate lawyer would have tried the case better or developed the facts differently at the PCR hearing are not legally cognizable grounds to grant a new trial.

## Conclusion

¶19.    In short, decisions about recanted testimony and whether a guilty verdict should be set aside are for trial judges.  And this court "'should not' tamper with such decisions unless they are 'clearly erroneous.'"  *Id*. at 1215 (¶12) (citing *Woods*, 141 So. 3d at 17 (¶13)).  Because the circuit judge's denial is supported by substantial evidence and is not clearly erroneous, we affirm.[3]

¶20.    **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR.  WILSON, J., NOT PARTICIPATING.**

---

[3] Graves filed a second petition for an extraordinary writ, arguing there is a new law that should be applied and that the circuit judge should have given a manslaughter lesser-offense jury instruction. Judge Griffis entered an order passing these issues for consideration with the merits of the appeal.  However, these issues were never raised in the circuit court.  Nor were they permitted by our supreme court to be argued in Graves's PCR motion.  Thus, these issues are procedurally barred, and Graves's petition is denied.