# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01208-COA

**DETRIUS ROBERSON**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2020 |
| TRIAL JUDGE: | HON. GEORGE M. MITCHELL JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM SCOTT MULLENNIX |
| | CODY WILLIAM GIBSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 06/28/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Detrius Roberson filed a motion for post-conviction relief (PCR) seeking a new trial based on a trial witness's recanted testimony. After an evidentiary hearing on Roberson's PCR motion, the Attala County Circuit Court entered an order denying the motion.

¶2.     Roberson now appeals. After our review, we find that the circuit judge's denial of Roberson's PCR motion was supported by substantial evidence and was not clearly erroneous. Accordingly, we affirm.

## FACTS

¶3.     Roberson, along with Justin James, Buddy Love, and Robert Landfair, allegedly

robbed a retail shop in Kosciusko, Mississippi. One person was shot and killed during the robbery.

¶4.     After the incident, two eyewitnesses identified Love as one of the robbers. Love was subsequently arrested, and he identified James, Roberson, and Landfair as the other people involved in the crime.

¶5.     Roberson and James were tried as co-defendants, and Love was tried separately. After their trial, Roberson and James were convicted of armed robbery, manslaughter, conspiracy to commit armed robbery, and two counts of aggravated assault. The trial judge sentenced Roberson and James to serve a total of sixty years in the custody of the Mississippi Department of Corrections.

¶6.     Roberson, collaterally with James, appealed his convictions. This Court affirmed the circuit court's judgment. *James v. State*, 146 So. 3d 985, 987 (¶1) (Miss. Ct. App. 2014).

*James's PCR motion*

¶7.     Approximately one year later, James filed a PCR motion seeking a new trial on the ground that a trial witness and co-conspirator, Love, had recanted his testimony from Roberson's and James's trial.

¶8.     The circuit judge conducted an evidentiary hearing on James's PCR motion. Love testified at the evidentiary hearing and recanted his trial testimony implicating James and Roberson in the shooting and robbery. Love claimed that he testified falsely during the trial because he and James were in rival gangs, and the gang leaders told him to implicate

2

Roberson and James in the crime to get them off of the streets. Love also claimed that Landfair had Roberson's phone during the robbery.

¶9. After the evidentiary hearing, the circuit judge entered an order denying James's PCR motion. The circuit court stated that in making its determination, he had reviewed Love's testimony during the trial and evidentiary hearing, as well as the transcript from Landfair's guilty-plea hearing. Prior to Roberson's and James's trial, Landfair pled guilty to conspiracy to commit armed robbery and accessory after the fact to armed robbery. During the plea hearing, Landfair testified that Love, James, and Roberson were involved in the robbery and shooting. The circuit judge found that although Landfair refused to testify at Roberson's and James's trial, Landfair never recanted his testimony from his plea hearing.

¶10. Regarding Love's trial testimony, the circuit judge found that although Love made some inconsistent statements, "he was always consistent in the persons involved . . . [and] their actions at the scene." The circuit judge also found Love's trial testimony "to be sufficiently corroborated by other witnesses and the cell phone records produced at trial," while "his recanted testimony is uncorroborated." The circuit judge ultimately determined that Love's recantation was "totally fabricated and not true."

¶11. James appealed, and this Court affirmed the circuit judge's denial of James's PCR motion after finding that "James failed to prove beyond a preponderance of the evidence that the recantation entitled him to a new trial." *James v. State*, 220 So. 3d 989, 991 (¶7) (Miss. Ct. App. 2016).

¶12.  Turning to the PCR motion currently before us, on October 27, 2016, the Mississippi Supreme Court granted Roberson's petition seeking leave to file a PCR motion in the circuit court.  On February 1, 2017,[1] Roberson filed his PCR motion seeking an evidentiary hearing and a new trial based on Love's recanted trial testimony.[2]  Roberson asserted in his PCR motion that "[t]here is a reasonable possibility that, had Love's false testimony not been admitted, a different result would have been reached at trial."  In support of his PCR motion, Roberson attached affidavits from Love, Landfair, Jonshay Bell, Jermaine Griffin, and Jimmy Young.

¶13.  In Love's affidavit, he stated that his testimony from Roberson's trial was untrue. Love explained that he testified falsely against Roberson and James because they were in rival gangs, and Love was given orders to "get rid of" Roberson and James.  Roberson maintained that the affidavits of Bell, Griffin, Young, and Landfair corroborate the assertions made in Love's affidavit.

¶14.  On September 23, 2019, the circuit judge held an evidentiary hearing on Roberson's PCR motion.  At the hearing, the circuit judge heard testimony from four witnesses: Love,

---

[1] This Court affirmed Roberson's convictions on direct appeal on February 11, 2014, and Roberson filed his PCR motion within three years of that ruling, as required by Mississippi Code Annotated section 99-39-5(2) (Rev. 2020).

[2] At some point after filing his first PCR motion, Roberson retained new counsel. On June 12, 2018, Roberson's new counsel filed a second PCR motion asserting the same claims and seeking the same relief that Roberson sought in the first motion.

Landfair, Griffin, and Young. Upon being sworn in, Love invoked his Fifth Amendment rights and refused to testify. However, Roberson's counsel submitted a copy of Love's testimony from Roberson's trial into evidence, as well the transcript from James's 2015 PCR evidentiary hearing where Love recanted his trial testimony. As stated, at James's evidentiary hearing, Love testified that Roberson and James were not present or involved in the robbery or shooting. Love stated that Landfair was present during the robbery and shooting, and Love claimed that Landfair had Roberson's phone with him during that time.

¶15. Landfair testified next. In his affidavit, which Roberson attached to his PCR motion, Landfair stated that on the night of the robbery and shooting, Roberson was not with him. Landfair's affidavit further stated that Landfair had Roberson's cell phone with him that night. However, during the evidentiary hearing, Landfair testified that the contents of the affidavit were not true. Landfair admitted that he signed the affidavit, but explained that he did not realize he was under oath when he signed it. Landfair testified that he signed the false affidavit because he "got tired of the harassment" from his and Roberson's friends asking him to sign it, and also because he wanted to help Roberson. Landfair stated that he "didn't think [he] could convince a judge that [he] had everybody['s] phone."

¶16. Landfair informed the circuit judge that his original testimony from his plea hearing was the truth of what actually happened during the robbery and shooting—that Roberson approached him about participating in a robbery; that he, Roberson, James, and Love went to the retail shop together with guns for the purposes of committing robbery; and that

5

Landfair did not have Roberson's cell phone with him that night. The transcript from Landfair's plea hearing was admitted into evidence.

¶17. The circuit judge then heard testimony from Griffin and Young. Griffin and Young both testified that they attended a Gangster Disciples meeting where the head of the gang ordered Love to take Roberson and James off the streets by implicating them in the robbery that Love committed. Neither Griffin nor Young were present during the robbery and shooting.

¶18. Although Bell did not testify at the evidentiary hearing, the circuit judge reviewed Bell's affidavit. In his affidavit, Bell stated that he was in prison with Love. According to Bell, Love told him that Love was coerced into implicating Roberson and James in the robbery, and that Landfair had Roberson's phone during the robbery.

¶19. After the hearing, the circuit judge entered an order denying Roberson's PCR motion. The circuit judge enumerated all of the documents that he read and examined in making his decision, including Roberson's PCR motion and attached affidavits; the transcripts from Roberson's trial, James's evidentiary hearing, and Landfair's plea hearing; as well as applicable case law. The circuit judge found that Roberson "has not presented any evidence to this [c]ourt that the result of his original trial would be any different if the recanted testimony was accepted and believed by this [c]ourt."

¶20. Roberson subsequently filed a motion to alter or amend the order denying his PCR motion or, in the alternative, for a new trial, which the circuit judge denied. This appeal

followed.

## STANDARD OF REVIEW

¶21.   When reviewing a circuit judge's denial of a PCR motion after an evidentiary hearing, we apply "the clearly erroneous standard." *Whitehead v. State*, 299 So. 3d 899, 904 (¶15) (Miss. Ct. App. 2020).  "The supreme court has explained that a finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made." *Id*. (internal quotation marks omitted) (quoting *Johns v. State*, 926 So. 2d 188, 196 (¶36) (Miss. 2006)).  We review issues of law de novo.  *Id*. (citation omitted).  "As the PCR movant, [Roberson] has the burden of showing [he] is entitled to relief by a preponderance of the evidence." *Id*.

## DISCUSSION

¶22.   Roberson argues that the circuit judge erred by denying his PCR motion after finding that Roberson failed to meet his burden of proof regarding Love's recanted testimony.

¶23.   Because he sought a new trial based on Love's recanted testimony, Roberson had to prove "to the satisfaction of the [circuit] judge at the evidentiary hearing . . . the perjury existed by showing that the recantation was material, and . . . [that] the result of a new trial would be different than the one reached." *Howell v. State*, 163 So. 3d 240, 248 (¶10) (Miss. 2014).  At an evidentiary hearing on a PCR motion, the petitioner bears the burden of proving "by a preponderance of the evidence that he is entitled to the relief."  Miss. Code

7

Ann. § 99-39-23(7) (Rev. 2020).  Roberson maintains that he met this burden based on Love's recanted testimony, Landfair's affidavit stating that he committed perjury at his plea hearing, and the affidavits of Bell, Griffin, and Young, which Roberson claims corroborated Love's statements.

¶24.    "[R]ecanted testimony, if believed by the [circuit] judge, may in some situations require a new trial.  But the mere fact a trial witness later recants does not itself necessitate a new trial."  *Graves v. State*, 187 So. 3d 173, 176 (¶13) (Miss. Ct. App. 2015).  The determination of whether a new trial is warranted based on recanted testimony is "left to the sound discretion of the [circuit judge] and should not be set aside unless clearly erroneous." *Peeples v. State*, 218 So. 2d 436, 439 (Miss. 1969).  "Typically, the [circuit] judge is tasked with deciding if the witness was lying at trial or later at the PCR hearing."  *Graves*, 187 So. 3d at 176 (¶13).  Our supreme court has cautioned that "[r]ecanting testimony has been shown to be extremely unreliable and should be approached with suspicion."  *Peeples*, 218 So. 2d at 439.  "A court will usually deny a new trial based on recanting testimony where it is not fully satisfied regarding the truthfulness of the testimony."  *Id*.  We recognize that "[c]redibility decisions [on recanted testimony] are for the [circuit] judge, not this [C]ourt." *Graves*, 187 So. 3d at 176 (¶12).

¶25.    The circuit judge held an evidentiary hearing regarding Love's recanted testimony. When Love refused to testify, Roberson's counsel submitted a copy of Love's testimony from Roberson's trial into evidence, as well the transcript from James's PCR evidentiary

8

hearing where Love recanted his prior trial testimony implicating Roberson in the crime. The circuit judge also heard testimony from Landfair, Griffin, and Young, and he examined Roberson's PCR motion and the attached affidavits, as well as the transcripts from Roberson's trial and Landfair's plea hearing. Additionally, the circuit judge examined James's PCR motion seeking a new trial based on Love's recanted testimony, the transcript from James's evidentiary hearing, the circuit judge's order denying James's PCR motion, and this Court's opinion affirming the denial of James's PCR motion.

¶26. After reviewing the testimony and evidence, the circuit judge denied Roberson's PCR motion. The circuit judge explained that Roberson "has not presented any evidence . . . that the result of his original trial would be any different if the recanted testimony was accepted and believed by this [c]ourt." The circuit judge referenced the order denying James's PCR motion, observing that the circuit judge in that case "found [Love's] recanted testimony to be totally fabricated and not true." The circuit judge also cited this Court's decision affirming Roberson's conviction on direct appeal. There, we held that Roberson's (and James's) convictions "are supported by more evidence than just the testimony of Love, the co-conspirator." *James*, 146 So. 3d at 995 (¶34). This Court explained that the convictions were supported by Roberson's and James's phone records, eyewitness testimony, and "the discovery of an unspent 9-millimeter round in James's car after the shooting." *Id*.

¶27. After reviewing the record, we cannot say that the circuit judge's credibility assessments and denial of Roberson's PCR motion were clearly erroneous. Because the

9

circuit judge's decision is supported by substantial evidence, we affirm.

¶28. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND McDONALD, J.; McCARTY, J., JOINS IN PART.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶29. Because I am bound to follow the applicable law, I concur with the majority's disposition in this case. I write separately because more objective guidance is needed to evaluate recanted testimony. Our Supreme Court has held, as a general rule, that recanted testimony is unreliable and should be met with suspicion and skepticism. *Howell v. State*, 989 So. 2d 372, 384 (¶33) (Miss. 2008). In addition, a new trial is granted when the court is "*fully satisfied* regarding the truthfulness of the [recanted] testimony." *Peeples v. State*, 218 So. 2d 436, 439 (Miss. 1969) (emphasis added). The criminal justice system relies heavily on testimony and the long-standing tradition of bringing a case to the point of finality. *See Smith v. State*, 492 So. 2d 260, 264 (Miss. 1986), *superseded by statute on other grounds as recognized in McClendon v. State*, 539 So. 2d 1375, 1377 (Miss. 1989).

¶30. As mentioned by the majority, the determination of whether a new trial is warranted based on recanted testimony "is left to the sound discretion of the [circuit judge] and should not be set aside unless clearly erroneous." *Peeples*, 218 So. 2d at 439. Notwithstanding my agreement with today's outcome, the rules for recanted testimony as currently applied subject defendants like Roberson to the unknown standards of each court. I would suggest that our

Supreme Court look to the approach adopted in New York, where the New York Court of Appeals established factors to evaluate the credibility of recanted testimony. New York considers recantation using the following factors:

> (1) the inherent believability of the substance of the recanting testimony; (2) the witness's demeanor both at trial and at the evidentiary hearing; (3) the existence of evidence corroborating the trial testimony; (4) the reasons offered for both the trial testimony and the recantation; (5) the importance of facts established at trial as reaffirmed in the recantation; and (6) the relationship between the witness and defendant as related to a motive to lie[.]

*People v. Wong*, 784 N.Y.S.2d 158, 160 (N.Y. App. Div. 2004).

¶31.   It would not be difficult for our Supreme Court to adopt or adapt New York's approach because the factors support our existing rules and provide consistent guidance for evaluating recanted testimony. In fact, this framework fully analyzes the circumstances of the disavowed testimony and provides clarity to the defendant filing claims based on recantation. Again, I write separately not only to shine a light on the minimal guidance provided regarding recanted testimony, but to offer a potential solution that would provide greater guidance, leave our general rules intact, and prevent injustice.

**BARNES, C.J., AND McDONALD, J., JOIN THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**

11